Charles MOORE Plaintiff

v.

YELLOW BOOK USA, INC. d/b/a Southern Directory Division and Liberty Life Assurance Company of Boston Defendants

No. 1:04CV184–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Oct. 15, 2004.

Ashley B. Abel, Jackson Lewis Schnitzler & Krupman, Greenville, SC, for Liberty Life Assurance Company of Boston, Defendant.

James D. Moore, James D. Moore, Attorney, Tupelo, for Charles Moore, Plaintiff.

Robert Douglas Morgan, Carroll Warren & Parker, PLLC, Jackson, for Liberty Life Assurance Company of Boston, Yellow Book USA, Inc., Defendants.

Robert M. Wood, Jackson Lewis Schnitzler & Krupman, Ms. Sandra Heskin, Eagan, MN, for Liberty Life Assurance Company of Boston, Defendant.

## OPINION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

DAVIDSON, Chief Judge. .

Presently before the Court is the Defendants' motion to dismiss and to strike demands for compensatory and punitive damages and for trial by jury. Upon due consideration the Court finds that the motion shall be granted in part and denied in part.

### A. Factual Background

This action, originally filed in state court, was removed by the Defendants on the basis of diversity and federal question jurisdiction. The complaint alleges that the Defendants are liable for the state law claims of breach of contract, and fraudulent misrepresentation. The Plaintiff is seeking compensatory and punitive damages and has requested a jury trial. At the center of the controversy is a long term disability policy the Plaintiff was provided and purchased as an employee of Yellow Book. The policy was issued by Liberty Life.

The Plaintiff claims that when he purchased the disability insurance the Defendants misrepresented the true value and benefits of the policy by stating that it "would pay him 60% of his monthly salary to age 65 in the event he became disabled prior to obtaining the age of 60 years." After the policy was issued and in January 2002, the Plaintiff became disabled and applied for the policy's benefits. In June, 2002, The Plaintiff began receiving policy disbursements. In August 2003, the Plaintiff began drawing social security disability benefits.

Until March 2003, the Plaintiff received full benefits, 60% of his monthly salary or $2,239.31, under the policy. After March 2003, the amount he collected under the policy was reduced to approximately 18.95% of his monthly salary or $708.31. The reduction in payment was due to a provision in the policy, unbeknownst to the Plaintiff, which provided that monthly benefits could be offset by, among other things, any social security disability benefit collected.

The Plaintiff alleges that he never received a copy of policy. But that, in any event, this provision was not disclosed and the Defendants fraudulently misrepresented the benefits in order to increase participation. The Plaintiff further alleges that the Defendant Yellow Book breached its contract to obtain disability insurance in accordance with the 60% salary payout represented. The Plaintiff has provided a copy of documents Yellow Book used to solicit employee's participation in the various disability plans. The Defendants have moved to dismiss contending only that the

Plaintiff's claims are preempted by ERISA.

### B. Standard for Review

When considering a motion to dismiss for failure to state a claim under 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *Am. Waste & Pollution Control Co. v. Browning–Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir.1991). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995) (*quoting, Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir.1994)). In deciding whether dismissal is warranted, the court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982).

### C. Discussion

The Employee Retirement Income Security Act, better known by its acronym ERISA, was enacted to protect participants in employee benefit plans and their beneficiaries, by requiring disclosure and reporting of information, establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and providing remedies, sanctions and access to federal courts. 29 U.S.C. §§ 1001, *et seq; Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). ERISA is a comprehensive piece of legislation intended to, almost, exclusively regulate employee benefit plans which the Act has expansively defined. 29 U.S.C. § 1003(a).

■ To ensure uniform application, ERISA has broadly preempted state law that "may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Preemption is required and state law causes of action are barred when "(1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir.1995). ERISA preempts "any state law that refers to or has a connection with an ERISA plan *even if* that law (i) is not specifically designed to affect such plans, (ii) affects such plans only indirectly, or (iii) is consistent with ERISA's substantive requirements." *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1994) (internal citations omitted).

■ Preemption is warranted when a state law cause of action "relates to" the administration of an employee benefit plan. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138–39, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Haynes v. Prudential Health Care*, 313 F.3d 330, 333–337 (5th Cir.2002) (explaining the difference between complete and express preemption, and allowing preemption of state law negligence claim because the HMO's decision was primarily administrative in nature as opposed to medical.). Applying this test, a state law "relates to an employee benefit plan whenever it has a connection with or reference to such a plan." *Hubbard*, 42 F.3d at 945. "Preemption applies to bar state law claims 'even if the action arises under general state law that in and of itself has no impact on employee benefit plans.'" *Saldana v. Aetna U.S. Healthcare*, 233 F.Supp.2d 812, 816 (S.D.Miss. 2002) (*quoting, Lee v. DuPont de Nemours & Co.*, 894 F.2d 755 (5th Cir.1990)).

In response to the motion to dismiss, the Plaintiff does not dispute that the employer provided benefit plan is subject to ERISA. Rather, the Plaintiff avers that the claims are not related to ERISA because the administration of the plan is not at issue. Instead, the complaint is based on the false representations knowingly made by Yellow Book with regard to the amount of coverage and extent of benefits provided. Therefore, the Court must determine if a state claim of fraudulent misrepresentation survives ERISA's broad preemption mandate. Thus, the tedious question presents itself once again, to preempt or not to preempt.

Understandably, there is no clear answer to this question because, to say the least, the law regarding fraudulent misrepresentation claims involving an ERISA plan is bewildering. Cases can be found to support both parties' positions. *See e.g. Golas v. HomeView Inc.,* 106 F.3d 1, 8 (1st Cir.1997) (affirming denial of preemption of fraud claim the court explained, "[i]f ERISA preempts a beneficiaries potential cause of action for misrepresentation, employees, beneficiaries and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding terms of the plan."); *Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 791 (1st Cir.1995) (negligent misrepresentation claim against employer based on employer's representations regarding perspective retirement benefits was preempted); *Griggs v. E.I. DuPont de Nemours & Co.,* 237 F.3d 371, 378 (4th Cir.2001) (ERISA preempts negligent misrepresentation claim where employer misrepresented the extent or existence of benefits under a benefit plan); *Perry v. P\*I\*E Nationwide Inc.,* 872 F.2d 157 (6th Cir.1989) (fraud claim not preempted where employees were induced and coerced into participating in a stock investment plan and in exchange for participating the employees had to irrevocably surrender 15% of their wages); *Shea v. Esensten,* 107 F.3d 625, 627–28 (8th Cir.1997) (fraudulent misrepresentation claim preempted based on lack of information and/or misinformation concerning scope of benefits coverage which limited participant's ability to make an informed choice); *Hall v. Blue Cross/Blue Shield of Alabama,* 134 F.3d 1063, 1064–66 (11th Cir.1998) (ERISA preempted fraudulent misrepresentation claim regarding scope of coverage which induced plaintiff to enroll in employer provided benefit plan); *Agee v. Armour Foods Co.,* 672 F.Supp. 1210 (W.D.Mo.1986) (fraudulent misrepresentation not preempted where claim was independent of plan administration and representation made solely for purposes of preventing unionization or seeking other employment).

The Fifth Circuit's guidance can be equally confusing. *See e.g. Geske v. Williamson,* 80 Fed.Appx. 906 (5th Cir.2003) (affirming district court's determination that ERISA preempted state law claim for fraudulent misrepresentation); *Hobson v. Robinson,* 75 Fed.Appx. 949 (5th Cir.2003) ("claims for fraudulent inducement do not require interpretation or administration of the ERISA plan" and were, therefore, not preempted); *Smith v. Texas Children's Hosp.,* 84 F.3d 152 (5th Cir.1996) (fraudulent inducement claim premised on employee's relinquishing benefits relying on defendant's promise of equal benefits was not preempted); *Hubbard v. Blue Cross & Blue Shield Ass'n,* 42 F.3d 942, 943 (5th Cir.1995) (fraudulent inducement claim against third party non-ERISA entity for disseminating false advertising materials which plaintiff relied on in deciding not to procure other insurance coverage was not preempted); *Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 756–57 (5th Cir.1990) (fraudulent misrepresentation

claim premised on employer's representation that retirement benefits would not increase which prompted plaintiffs' early retirement was preempted); *Perkins v. Time Ins. Co.*, 898 F.2d 470 (5th Cir.1990) (ERISA did not preempt employee's fraudulent inducement claim where insurance agent convinced him to surrender coverage under existing policy in order to participate in plan that did not provide promised coverage). The dividing line between what is and is not preempted is very fine and certainly has not been fully or finally drawn.

In this Circuit, the discussion must begin with *Perkins v. Time Ins. Co.*, where the court held "a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly," and is "not preempted by ERISA." 898 F.2d at 473. Significant to the court's decision was the relationship between the employee plaintiff and the independent insurance agent making the alleged fraudulent representations which did not "affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries)." *Id.* at 473. Interestingly, the court cited with approval *Perry v. P\*I\*E*, 872 F.2d at 157, for the proposition that "state claims alleging fraudulent inducement to participate in an ERISA plan are not preempted by ERISA." *Perkins*, 898 F.2d at 474.

The next significant comment from the Fifth Circuit on the issue came in *Smith v. Texas Children's Hosp.* in which the court held that the plaintiff's fraudulent inducement claim "was not preempted by ERISA, where she did not seek disability benefits that employer allegedly owed her under its ERISA plan, but vested benefits that plaintiff had acquired while employed

with previous employer, but then relinquished in reliance upon defendant's alleged misrepresentations." 84 F.3d at 152. The plaintiff in *Smith* was enticed to leave her current job by the defendant's promise of a promotion with increased pay and the transfer of "all her employment benefits, including long-term disability benefits." *Id.* at 153. Several months after accepting the new position, Smith became disabled. *Id.* The defendant insurer ultimately denied Smith any disability benefits insisting her disability was a preexisting condition. *Id.* at 154. The court held, "[t]o the extent that Smith is claiming that she is entitled to disability benefits under [the defendant's] ERISA plan, her claim is preempted." *Id.* at 155. However, Smith retained her fraudulent inducement claim "based upon the benefits that she had at [her previous employers] and relinquished by leaving." *Id.* Clarifying the distinction the court opined, "Smith's entitlement to benefits under [the ERISA plan] can be considered separately from the question whether [the defendant] mislead her into believing that she would be entitled to benefits under that plan; the former question requires reference to [the] plan, while the latter focuses on what [the defendant] told her." *Id.* at 157.

Finally, the most recent pronouncement closely related to the issue was in *Hobson v. Robinson*, where the court similarly held that the plaintiffs' claims of fraud and misrepresentation were not preempted by ERISA. 75 Fed.Appx. at 949. The defendants in *Hobson*, approached the plaintiffs about providing health insurance and benefits at a lower cost than they were currently paying. *Id.* at 951. Relying on the defendants' representations, the plaintiffs cancelled their existing coverage. *Id.* The defendants never procured an insurance policy for the plaintiffs. *Id.* After incurring medical expenses, the plaintiffs sought reimbursement which was not

forthcoming and later sued. *Id.* The district court determined that ERISA preempted the plaintiffs' state law claims and dismissed the matter. *Id.* On appeal, the court held that the plaintiffs' claim for breach of contract was preempted "because those claims involve the interpretation of the ERISA policy." *Id.* at 952. However, the fraud and misrepresentation claims survived preemption. *Id.* at 953.

The *Hobson* Court emphasized that "the important factor in ERISA preemption is the relationship between the parties involved in the claim itself and whether that claim is intricately bound with an ERISA plan." *Id.* at 955. Citing *Smith*, the court confirmed, "the law in this circuit [is] that a state law claim for fraudulent inducement is not preempted by ERISA." *Id.* at 956. Following this declaration, the Fifth Circuit referred to *Erwin v. U–Haul Int'l, Inc.*, Civ. A. 3:01–CV–2218–M, 2002 WL 265075 at *2 (N.D.Tex. Feb.22, 2002) which held a fraudulent inducement claim against an employer was not preempted because although it "necessarily touches upon the existence of the ERISA plan, it is related to the plan only indirectly." *Hobson*, 75 Fed.Appx. at 956 n. 14.

■ Now, as for the case *sub judice*, the Court recognizes that the facts of this case create a close preemptive call. And, the Court is aware of the balance that ERISA attempts to strike; that is, to protect the participants in and beneficiaries of employee benefit plans while minimizing the administrative and financial burden of compliance for employers. *Id.* at 952–53. With this guidance in mind, the Court finds that, for reasons explained *infra*, the Plaintiff's breach of contract claim against Yellow Book is preempted by ERISA and the fraudulent misrepresentation claim is not preempted as it is only indirectly related to the plan.

First, as was the case in both *Hobson* and *Perkins*, the breach of contract claim against the employer is preempted by ERISA. The breach of contract claim is conceptually distinct from the claim of fraudulent misrepresentation. The Plaintiff's contract claim is unavoidably interwoven with the ERISA plan in that it is asserted simply to recover benefits denied. Any claim premised on the same would necessarily relate to the administration of the plan and could not be resolved without reference to the policy. *See Hobson*, 75 Fed.Appx. at 952 ("[w]e agree that under *Pilot Life*, all of Hobson's claims for breach of contract are preempted because those claims involve the interpretation of the ERISA policy ... *Pilot Life* is inapposite, however, to the claims for fraud and misrepresentation because the underlying conduct occurred in the inducement of an ERISA policy, not in its administration.").

The fraudulent misrepresentation claim is a horse of a different color. The Plaintiff avers that Yellow Book, as Liberty Life's agent, presented the disability plan with full knowledge of the offset provision and yet, did not disclose this to the Plaintiff. Further, the Plaintiff contends that he reasonably relied on this false information in deciding to purchase and participate in the plan.

As mentioned before, the Plaintiff has provided a notarized statement from a former employee of Yellow Book. The statement swears to the validity of three other documents given to Yellow Book employees as the only information provided regarding disability benefits. Indeed, the documents refer to several disability plans from which the Plaintiff and other employees were encouraged to choose. Nowhere, however, is it indicated that Liberty Life would be the insurer. For the purposes of this motion, the Court will accept the Plaintiff's agency theory as fact, *i.e.* that

Yellow Book was acting as the agent for Liberty Life.

Also, the documents were obviously intended to be an overview of the proposed policies' costs and benefits. However, the "long term disability extended" plan is presented, in several different variations, as paying a disabled participant "60% of monthly salary," without qualification. In other words, the information provided to employees does not ever mention that benefits may vary depending on other sources of other income. In fact, one of the documents provides an example calculation of benefits and costs. The example discusses benefits in terms of "salary" and not other income as defined in the policy. Whether or not this is intentionally deceptive is an entirely different issue not up for review today.

Granted, with the inclusion of the offset provision it is hard to imagine a scenario in which a permanently disabled beneficiary under this plan would ever be entitled to recover the entire 60% indicated. Fortunately, the fraudulent misrepresentation claim only affects the plan in a "tenuous, remote [and] peripheral" manner and does not require such close scrutiny of the policy. *Hobson*, 75 Fed.Appx. at 952. Without passing judgment on the Defendants' actions, surely when congress enacted ERISA it did not intend to insulate employers and insurance agents from liability for gaining greater participation by misrepresenting the scope of benefits. *See Golas v. HomeView Inc.*, 106 F.3d 1, 8 (1st Cir.1997) ("[i]f ERISA preempts a beneficiaries potential cause of action for misrepresentation, employees, beneficiaries and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding terms of the plan.").

Therefore, the Court finds that the Plaintiff's breach of contract claim against Yellow Book is preempted and shall be dismissed. However, the fraudulent misrepresentation claim lodged against both Defendants relates to the ERISA plan only indirectly and is, therefore, not preempted. In accordance with the Fifth Circuit's holdings in *Perkins, Smith*, and *Hobson*, the Plaintiff has successfully stated a claim upon which relief may be granted. Furthermore, since the Court has determined that the Plaintiff may maintain a state law claim, the Defendants' motion to strike the demand for damages and a jury trial shall be denied.

A separate order in accordance with this opinion shall issue this day.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendants' motion to dismiss (docket entry 5) is GRANTED IN PART and DENIED IN PART;

(2) the motion is GRANTED as to Plaintiff's breach of contract claim and the same is hereby DISMISSED;

(3) the motion is DENIED as to the Plaintiff's fraudulent misrepresentation claims;

(4) the motion is DENIED as to the request to strike demand for compensatory and punitive damages and for trial by jury; and

(5) the Plaintiff's fraudulent misrepresentation claims shall proceed to trial by jury with all relevant remedies available upon proof.

All memoranda, depositions, declarations, and other materials considered by the Court in ruling on this motion are

hereby incorporated into and made a part of the record in this action.